377 Mass. 621    621

Board of Public Works of Wellesley v. Board of Selectmen of Wellesley.

BOARD OF PUBLIC WORKS OF WELLESLEY vs. BOARD OF SELECTMEN OF WELLESLEY & another.[1]

Norfolk. December 4, 1978. — March 26, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Municipal Corporations*, Officers and agents, Town counsel, Board of public works. *Wellesley.*

A town's board of public works did not have power to commence litigation for the benefit of the town or to retain separate counsel except on special application to the selectmen or a town meeting. [623-625]

A town's acceptance of G. L. c. 41, §§ 69C-69F, did not make the town's board of public works an agent to sue for the town in respect to matters arising from its functions or duties nor did it abrogate a specific by-law provision prohibiting the board's retention of separate counsel except on special application to the selectmen or a town meeting. [625-629]

CIVIL ACTION commenced in the Superior Court on September 1, 1977.

The case was heard by *Lynch*, J.

The Supreme Judicial Court granted requests for direct appellate review.

*Edward C. Donlon* for the plaintiff.

*Albert S. Robinson* for the defendants.

KAPLAN, J. In the year 1975 the town of Wellesley's board of public works (herein sometimes called "the board") made it known that it thought the board of selectmen of the town and the town counsel were not pursuing with sufficient vigor the remedies owing to the town for a fraud or other irregularities growing out of a refuse disposal contract. The board took the position that, as

[1] The town of Wellesley.

refuse disposal was within the area of its responsibilities (the board acted for the town in entering into such contracts), it had the power to initiate and carry on litigation concerning these transactions. The board also contended that it was empowered to retain counsel, independent of town counsel, to handle the litigation, the costs to be borne by the town. More generally, the board claimed it had the authority to retain independent counsel at town expense whenever it concluded that this was necessary for the proper discharge of its duties, whether in the way of litigation or otherwise. The selectmen, on the contrary, asserted that the board could not commence litigation for the benefit of the town without specific authorization by the town, and that the board was denied by a specific town by-law any right to retain separate counsel except on special application to the selectmen or a town meeting. Like disputes about the board's powers had arisen in a variety of contexts.[2]

In the end, a town meeting of April 25, 1977, in effect invited the board to litigate the issues: the meeting voted to authorize the payment of legal expenses to be incurred by the board in retaining counsel to make the test. Accordingly the board through such counsel commenced the present action in the Superior Court on September 1, 1977, naming the board of selectmen and the town of Wellesley as defendants,[3] and seeking a declaration that it had the powers claimed. The defendants, by town counsel, responded with appropriate pleadings, including a counterclaim praying a declaration that the by-law provision mentioned was valid and binding on the board. On

---

[2] Apparently disagreements had arisen about the employment of counsel in disputes with contractors, various town departments, and the board of selectmen itself.

[3] The original complaint named only the board of selectmen, which moved to dismiss on the ground that the town was the proper party defendant. Denying the motion, the judge ordered the plaintiff to amend its complaint to join the town, and the complaint was so amended.

a statement of agreed facts, adding little to our foregoing statement that is material to decision,[4] the judge held for the defendants and entered a declaratory judgment in favor of the defendants.[5] We granted direct appellate review on the application of both sides. We affirm.

We deal first with the question of the board's power to initiate litigation for the benefit of the town and to retain independent counsel. Then we discuss briefly an issue of interest to the parties (not passed on below) which can arise when town counsel finds himself in a situation of conflict.

1. With respect to the initiation of litigation for a recovery of money or for other remedies inuring to the benefit of the town, the defendants point to a provision of the by-laws (art. III, § 3) which grants to the selectmen "full authority as agents of the Town . . . to institute, prosecute, defend and compromise any and all claims, actions, and proceedings on behalf of or against the Town and in which the interests of the Town are or may be involved." No other municipal department or official is granted this power. The appointment of the selectmen as "agents" is

---

[4] It may be noted that the board of public works has never requested the town meeting to authorize it to hire independent counsel; the town's by-laws may be amended by a majority vote of those present at the town meeting. See also n.7, second paragraph.

[5] The declaration states:

"1. That Article X of the By-Laws of the Town of Wellesley (the Town Counsel By-Law, so-called) is a valid By-Law, and is a valid exercise of the power given to municipalities to enact By-Laws not inconsistent with any general or special law.

"2. The Town of Wellesley's acceptance of G. L. c. 41, §§ 69C-F, did not abrogate, suspend or override the Town Counsel By-Law as applied to Wellesley's Board of Public Works.

"3. The prohibition in Wellesley's Town Counsel By-Law against any town board or officer engaging counsel without an approving vote of the Selectmen or the Town is applicable to and binding upon a consolidated Board of Public Works established pursuant to the voters' acceptance of a General Law.

"4. The Board of Public Works of the Town of Wellesley does not have authority to sue in the name of the Town in that it has not been appointed an 'agent' for such purpose pursuant to G. L. c. 40, § 2."

traceable to G. L. c. 40, § 2, a statute of long standing which in its present form reads, "A town may in its corporate capacity sue and be sued by its name, and may appoint necessary agents therefor." It is conventional learning that a municipal department is not permitted to bring suit for the town without specific authorization from the town or from agents entitled to act for it — unless, indeed, there is governing legislation conferring the power on the department. See *Great Barrington* v. *Gibbons*, 199 Mass. 527 (1908); *Lexington* v. *Mulliken*, 7 Gray 280 (1856). The rule serves to prevent confusion or conflict in the direction and management of municipal litigation. Cf. *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514 n.1 (1977); *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 548 (1959).

As to the authority to engage counsel, art. X of the by-laws, entitled "Law Department," provides for the annual appointment of town counsel by the selectmen and describes his functions, among which is the power and duty "to appear as counsel in any ... action, suit, or prosecution which may involve the rights and interests of the Town." And when requested he must "consult with and advise any board, commission, committee, or officer of the Town and ... furnish a legal opinion upon any subject respecting the official duties thereof." Accompanying this statement of town counsel's functions is a by-law provision prohibiting generally the retaining of other counsel. Such a prohibition was enacted by the town in 1929 and was carried forward in by-law revisions of 1937 and 1950. On November 8, 1977 (shortly after the commencement of the present action), a town meeting rejected proposed amendments which would have deleted the provision or, by added language, have rendered it inapplicable to the board of public works. Instead the meeting enacted a strengthened provision reading as follows (art. X, § 5): "Unless expressly authorized by statute, a vote of Town Meeting, or vote of the Selectmen, no board, commission, committee or officer of the Town shall

engage, whether or not for remuneration, any attorney, other than Town Counsel, with regard to its or his official duties, or any town business, or the business of any of the departments thereof. The Selectmen may, whenever they deem necessary, employ special counsel to assist or act in place of Town Counsel." (The parties agree that the 1977 changes did not alter the provision in principle and that the decision herein should be based on the current text just quoted.)[6]

Municipal enactments centering legal activities in a counsel officially appointed are common (as noted in *O'Reilly* v. *Scituate*, 328 Mass. 154, 155 [1951]); their purpose to control expense and improve management is evident; and it is not disputed that the town acted within its acknowledged general powers in enacting the instant by-law provision. Nor is it questioned that the board of public works is comprehended in the by-law words "board . . . of the Town." Compare the remarks in *Commonwealth* v. *Oliver*, 342 Mass. 82, 83-84 (1961).

Thus on a superficial view the board would appear not authorized to commence litigation for the town and prohibited from retaining separate counsel for such litigation or for other purposes. What the board undertakes to argue is that its basic statute, G. L. c. 41, §§ 69C-69F, on the one hand makes it an agent to sue for the town in respect to matters arising from its functions or duties, and on the other hand operates to erase pro tanto, as inconsistent, the prohibitory by-law as to using counsel other than town counsel.

---

[6] When this action was commenced, and when the judgment below was entered, the by-law provision stated: "No board, commission, committee or officer of the Town shall, unless authorized by a vote of the Town or of the Selectmen, employ, advise with or consult any attorney or counselor at law, other than the Town Counsel, with regard to its or his duties or to any Town business, or the business of any of the departments thereof, when the charge for such advice or consultations is to be made to the Town, or is to be paid out of the funds of the Town or of any department thereof."

626                                377 Mass. 621

Board of Public Works of Wellesley *v.* Board of Selectmen of Wellesley.

We examine the statute. On November 18, 1953, a majority of the voters at a Wellesley town meeting voted in the affirmative on the question, "Shall sections [69C] to [69F], inclusive, of chapter [41] of the General Laws, providing for the establishment of a board of public works exercising the powers of certain other departments and town officers be accepted?"

Under the statutory provisions thus accepted, particularly § 69D, the board of public works, consisting of three elected officials serving three-year terms, is a consolidation of a number of town boards, departments, and offices, including the road commissioners (see G. L. c. 41, § 64), surveyor of highways (§ 62), superintendent of streets (§ 68), water commissioners (§ 69B), sewer commissioners (§ 65), municipal light board (G. L. c. 164, § 55), park commissioners (G. L. c. 45, § 5), and tree warden (G. L. c. 87, § 2). On the board of public works are conferred "all the powers and duties now or from time to time vested by general law or special act" in the enumerated town agencies, as well as such additional powers as the town may provide by by-law regarding the furnishing of engineering services, the collection and disposal of garbage and refuse, and the performance of duties of other town agencies which are reasonably related to the duties of a board of public works. By special acts one of the board's predecessors was authorized to exercise powers of eminent domain (St. 1907, c. 567), and the board of public works has been authorized to make sewer connections and enter into contracts "in the name and behalf of the town" for that purpose (St. 1959, c. 139), and to employ a method of apportioning sewerage construction costs other than those described in G. L. c. 83, § 15 (St. 1973, c. 104). And by art. XI of its by-laws, the town gave the board authority over engineering functions and the collection and disposal of refuse and garbage. Each year the board in the name of the town has contracted for (among other things) refuse disposal, construction of sewer connections, and engineering services.

377 Mass. 621                                             627

Board of Public Works of Wellesley v. Board of Selectmen of Wellesley.

The functions of the board are quite extensive, but essentially they are a collation of the powers of preexisting municipal agencies, and it is not established that any had the power to institute or conduct litigation for the benefit of the town. There is no mention of such a power anywhere in the consolidating statute or in the special acts or by-law provisions vesting functions in the board. The board is reduced to claiming that the power is implied, but of this suggestion we take the same negative view as did the judge below, noting the specific appointment of the selectmen as "agents" under G. L. c. 40, § 2, and the traditional refusal of the courts to imply the power merely from the nature of the official who claims it. *Walpole v. Gray*, 11 Allen 149 (1865) (board of selectmen); cf. *George A. Fuller Co. v. Commonwealth*, 303 Mass. 216 (1939) (State Department of Public Works).

Nor does the consolidating statute confer on the board in any form of words a power to engage its own counsel. (We exclude from this remark the singular instance that the board's takeover of the functions of the municipal light board may be supposed to include the express power granted to the light board by G. L. c. 164, § 56, to employ counsel—but only as to matters of a type formerly committed to that board.) Again the board urges that a power be implied, but in the present context that would amount to negating, by some emanation from the consolidating statute, the local legislation on the precise point. We have said that the "legislative intent to preclude local action must be clear." *Bloom v. Worcester*, 363 Mass. 136, 155 (1973), discussing Amendments to the Constitution of the Commonwealth, art. 89, § 6 (home rule principles). It could not be said that the consolidating statute creates such a "comprehensive scheme" as should be construed to defeat the local regulation. Compare *Taunton Greyhound Ass'n v. Dighton*, 373 Mass. 60 (1977), with *New England Tel. & Tel. Co. v. Lowell*, 369 Mass. 831, 835 (1976), and *DelDuca v. Administrator of Methuen*, 368 Mass. 1 (1975). The board is met with other difficulties.

628 377 Mass. 621

Board of Public Works of Wellesley *v.* Board of Selectmen of Wellesley.

There is little in the board's suggestion that a power to contract includes by way of necessary inference a right to engage separate counsel to give advice or to litigate. See *Howes* v. *Essex*, 329 Mass. 381, 384 (1952); *George A. Fuller Co.* v. *Commonwealth, supra* (authority to settle claims is not incidental to State Department of Public Works's broad powers of regulation and express authority to enter into contracts). The principle that "[i]n the absence of legislative authority . . . a department of a city or town has no authority to employ counsel," *O'Reilly* v. *Scituate, supra* at 154, is borne out by many decisions showing intense skepticism about claims of inherent or implied right and refusing to allow them. See, e.g., *Jenney* v. *Mattapoisett*, 335 Mass. 673 (1957) (town finance committee); *Higginson* v. *Fall River*, 226 Mass. 423 (1917) (fire commissioners); *Fletcher* v. *Lowell*, 15 Gray 103 (1860) (mayor). See generally Annot., 2 A.L.R. 1212 (1919).[7] The

---

[7] These cases dispose of the board's argument that predecessor boards or officials, to whose functions it succeeded, had inherent power to hire separate counsel. (This is surely not shown to be the case as to any municipal agency that formerly dealt with refuse or garbage disposal.) The argument is most obscure. Cases are cited which indicate that a municipality may not by local legislation interfere with the performance of duties cast on local officials by State statute (see *Municipal Light Comm'n of Taunton* v. *Taunton,* 323 Mass. 79 [1948]; *Tuckerman* v. *Moynihan,* 282 Mass. 562 [1933]) but the cases appear irrelevant to the proposition contended for, and in any event beg the question whether the board has a statutory power to use separate counsel or to bring suit.

We may mention here that the board advances evidence that it has brought suit without express authorization in the past. To this end it introduced an affidavit from its supervisor of customer accounts, who collects overdue electric and water bills. The supervisor stated that he had, on a number of occasions, filed and prosecuted complaints in the name of the town. The board also suggests that town counsel had on August 4, 1977, provided the board with a standard release form to enable the department of public works to settle claims on behalf of the town. But we have held that a practice of bringing suit through separate counsel could not validate a violation of a municipal prohibition directed against such a procedure. *Butler* v. *Charlestown,* 7 Gray 12, 16-17 (1856). And in an opposing affidavit town counsel stated that he had been unaware of the board's asserted practice of bringing suit;

377 Mass. 621                                              629

Board of Public Works of Wellesley v. Board of Selectmen of Wellesley.

*O'Reilly* case involved a municipal planning board created by general statute. At issue was the authority of the agency to employ independent counsel. It had extensive enumerated duties (G. L. c. 41, §§ 81A-81GG), and also a power expressly granted (§ 81A) to "employ experts and clerical and other assistants." We held against the agency's claim of right to retain its own counsel. "When legal counsel is meant it is usual to say so." 328 Mass. at 155.[8]

To return to the place of beginning, when the board apprehended (with what justification we cannot say) that town counsel was being lax in prosecuting the alleged frauds, its recourse was, under the by-law, to the selectmen, or to a town meeting, for permission to engage independent counsel (with additional action, if any was needed, to secure authority to carry on the necessary litigation).[9] That route was not taken. The decision, whether right or wrong, was for the selectmen or town meeting.[10]

2. The board suggests that even if, as a general rule, it must obtain approval from another source before engag-

that in submitting the release form he had not considered the department's authority to settle claims; and that on November 3, 1977, he ruled that the department had no such authority.

[8] We may observe that when the Legislature has intended to authorize municipal boards and departments to retain separate counsel it has known how to do so. See, e.g., G. L. c. 71, § 37E (school committees); G. L. c. 71, § 16 (*j*) (regional school district).

[9] The preferred course for a board which has received authorization to bring suit on behalf of the town is to do so in the town's name, *Natick* v. *Massachusetts Dept. of Pub. Works*, 341 Mass. 618 (1961); *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 548 (1959), but we have not insisted that pleadings be formally amended to substitute the name of the town for that of the board inadvertently used. See *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514 n.1 (1977); *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.*, 344 Mass. 281, 286-287 (1962). See also *Board of Pub. Works of Millis* v. *Aron*, 374 Mass. 246 (1978).

[10] We do not mean to exclude the possibility that in extraordinary or emergency situations an exception might be made to the general principles set forth in point 1 of our text. See *Walpole* v. *Gray*, 11 Allen 149, 151 (1865).

ing its own attorney or bringing suit, it should be free of the constraints and entitled to proceed (presumably at town expense) when town counsel is embarrassed by a conflict of interest. As an example, a situation is imagined where there is a jurisdictional dispute between the board and another agency of the town, the selectmen and town counsel favor the other agency, and the matter appears proper for judicial settlement. We are given no concrete, true-to-life cases; and so diverse are the possible combinations of circumstance in local government that we dare not attempt a generalization (in this we adopt the same circumspect attitude as the judge below).[11] But we venture a few remarks. For permission to engage counsel, resort to the selectmen or a town meeting would be possible under the by-law; indeed the present action, which sought to settle an internal town dispute, resulted from a vote at town meeting. Cf. *Moulton* v. *Beals*, 98 N.H. 461 (1954). (Specific authorization to commence the present suit was evidently not thought necessary, and in any event would, we suppose, have been readily forthcoming together with the permission to retain counsel.) Town counsel, perceiving a need for adversary representation, might himself recommend that permission be given under the by-law; and the record shows that such recommendations in fact have been made — and followed — in Wellesley. Failing recourse to the by-law, we conceive that it would be open to members of the board, as individuals with a particular interest (see *Kaplan* v. *Bowker*, 333 Mass. 455, 459-461 [1965]), to employ counsel and

---

[11] The judge below, in declaring against the board, wrote an opinion in which he included the statement that the board would have authority to engage counsel in special circumstances in which it sought relief in the nature of mandamus against another board or an officer of the town. He later struck the statement as not germane to the declaration requested in the pleadings (he ruled that a motion to enlarge the pleadings had been improvidently granted, and vacated the order). The parties at argument before us joined in requesting consideration of a question which we have attempted to formulate in the text.

get a judicial resolution of the problem by means of an action in the nature of mandamus (G. L. c. 249, § 5); or, joining others, by a taxpayers' action (G. L. c. 40, § 53). Mandamus was used for such a purpose in *Pearsons* v. *Ranlett*, 110 Mass. 118, 126 (1872) (water commissioners). The defendants herein acknowledge that a remedy of this sort would be available in proper cases and indicate that "if the board were vindicated, any reasonable ... Town would probably vote to volunteer payment." We do not say whether there may be circumstances in which members of a board would be legally entitled to reimbursement of costs they may have laid out personally, or, in that connection, to assurance of payment in advance.[12]

*Judgment affirmed.*[13]

---

[12] For cases of some interest, though in varying settings, touching upon the authority of a municipal board to engage counsel to obtain a judicial resolution of a dispute with another municipal agency, compare *Glensor, Clewe & VanDine* v. *Andriano*, 99 Cal. App. 607 (1929), and *State ex rel. Finlayson* v. *Gorman*, 117 Minn. 323 (1912), with *Cahn* v. *Huntington*, 29 N.Y.2d 451 (1972), and *Judson* v. *Niagara Falls*, 140 App. Div. 62 (1910), aff'd, 204 N.Y. 630 (1912).

[13] The judgment is to be understood in a qualified sense so far as the board acts in succession to the municipal light board.